[No. 30366. Department Two. June 4, 1948.]

CARL E. SCHACHT *et al.*, *Appellants*, v. MARION WILLIAM CROSS *et al.*, *Respondents*.[1]

*Oluf Johnsen*, for appellants.

*Ralph Purvis*, for respondents.

BEALS, J.—Carl E. Schacht and Olga Schacht, husband and wife, as plaintiffs, filed their complaint in the office of the clerk of the superior court for Kitsap county, naming Marion William Cross and Rosalie Cross, husband and wife, and the Western Washington Corporation of Seventh Day Adventists, a corporation, as defendants.

In their complaint, plaintiffs alleged that they and their predecessors in interest had owned a tract of acreage in

[1]Reported in 193 P. (2d) 856.

Kitsap county since July 2, 1877. The tract is composed of several metes and bounds descriptions, which it is unnecessary to set forth in detail.

The complaint further alleged that John G. Wagner and Mary Wagner, husband and wife, were the owners of acreage adjoining plaintiffs' lands on the north and northwest; that, at the time of filing the complaint, the defendants Cross and the above-named corporation were the owners of the Wagner tract, as successors in interest of the Wagners; that the boundary line between the two tracts of land is described as follows:

"Beginning at a point on the North and South center line of Section 24, Township 25 North, Range 1 E. W. M. 1332.05 feet North of the center of said section, thence North 89°55'22" east 1534.60 feet, thence North 22°58' East 89.12 feet, thence North 13°58' East 164.09 feet to the U. S. Government meander line";

and that the defendants asserted some interest in, or claim upon, plaintiffs' lands and contended that the boundary line between the tracts, relied upon by plaintiffs, was not the true dividing line.

Plaintiffs prayed that the defendants be required to set forth any claims they might have to plaintiffs' lands, and show the location of the boundary line between the tracts, as contended for by defendants; that plaintiffs' title to their lands to the boundary line, above referred to, be quieted, and that they be granted general relief.

The defendants answered the complaint, alleging their ownership of a tract of land described in an exhibit attached to their answer, the tract consisting of several contiguous descriptions, and that they and their predecessors in interest had been the owners of the property described for many years.

Defendants then pleaded a description of the boundary line in accordance with their contention, and alleged that plaintiffs had torn down the previously existing fence along the true boundary line.

Defendants prayed that plaintiffs' action be dismissed, and that plaintiffs be restrained from interfering with any

fence which might be erected along the boundary as contended for by defendants.

It was later stipulated between all parties that the defendant corporation, above referred to, should be dismissed from the action, and that Helen Wagner, Minnie Wagner, Elsie Long, and Laura Faulk, as successors in interest to Mr. and Mrs. Wagner, be made parties defendant.

The additional parties defendant thereafter filed their answer to plaintiffs' complaint, an order substituting them in place of the corporation having been regularly made and entered.

The trial court found that the defendants were the owners of the property formerly owned by Mr. and Mrs. Wagner.

Plaintiffs having filed their reply denying the affirmative allegations contained in the answer of defendants Cross, the action was tried to the court, sitting without a jury, and resulted in the entry of findings of fact and conclusions of law in favor of the defendants, followed by a judgment adjudging and decreeing that the boundary, or dividing line, between defendants' property on the north and the adjoining property on the south, belonging to the plaintiffs, is described as follows:

, "Beginning at a point on the North and South center line of Section 24, Township 25 North, Range 1 E. W. M. 1332.05 feet North of the center of said section, thence North 89°55′22″ East 1551.00 feet, thence North 25° *West* 95.04 feet, thence North 16° East to the U. S. Government meander line."

The word "west," italicized, is an error; the description should read "*east.*"

The judgment then continues as follows:

"That the above described property and division line, within one year last past has been surveyed and fixed and established on the ground by OLIN SPRAGUE, surveyor, and that said survey be and the same is hereby declared to be the true and correct and established boundary line between the property of the plaintiffs and the defendants.

"IT IS FURTHER ORDERED that the plaintiffs herein be and they hereby are restrained from interfering in any way with the defendants enjoyment of the property owned by

them, and are specifically restrained from molesting, damaging or removing any fence which may hereafter be established on said boundary line by the defendants herein."

Prior to entry of the judgment, the trial court announced its ruling in favor of the defendants; whereupon plaintiffs moved for judgment in their favor or, in the alternative, for a new trial, which motions were denied.

Plaintiffs have appealed from the judgment rendered, and present the following assignments of error:

"(1) The court erred in finding that the division line between the properties had been marked by a fence and that this fence had been recognized by the parties and previous owners as the dividing and boundary line between the properties.

"(2) The court erred in finding that the defendants and their predecessors in title had at all times for more than seven years openly and hostilely claimed ownership of all the property up to said fence.

"(3) The court erred in finding that the plaintiffs had ever removed any portion of the boundary line fence or had threatened to again remove said fence if it should be rebuilt in its former location by the defendants.

"(4) The court erred in finding the survey made by Olin Sprague to be correct.

"(5) The court erred in entering judgment in favor of defendants.

"(6) The court erred in denying plaintiffs' motion for a new trial."

Appellants have owned all of the property which they now own since 1926, and Mr. and Mrs. Wagner purchased their tract in 1916. By an executory contract, bearing date April 17, 1945, Mr. and Mrs. Wagner agreed to sell their property to the respondents Cross, the grantors reserving to themselves a life estate in one of the dwelling houses situated upon the property, together with an easement for ingress and egress. Both Mr. and Mrs. Wagner died prior to the trial. Evidently, the respondents Wagner *et al.* own the property, subject to the contract of sale to Mr. and Mrs. Cross.

The properties of both parties border, on the east, on Brown's Bay, an inlet of Puget Sound, each party owning

abutting shore and tide lands. Both parties obtained title to their respective lands by deeds describing the lands conveyed by metes and bounds. The disagreement between the parties consists of a divergent opinion as to the length toward the east of the boundary line between the respective properties, respondents contending that this line extends approximately seventeen feet farther to the east than appellants admit.

The trial court determined this issue in respondents' favor. By its decree, the trial court fixed the southeasterly boundary of respondents' property as commencing at the easterly end of the south boundary line of respondents' land (as previously determined by the trial court), "thence North 25° *West* [error, should be *east*] 95.04 feet, thence North 16° East to the U. S. Government meander line."

The divergent claims of the respective parties to this action, then, concern a strip of land extending from the southeasterly corner of respondents' property, in a northeasterly direction, to the meander line.

Appellant Carl Schacht testified as a witness on his own behalf, identifying copies of three deeds, which he received at different times during or prior to 1926, conveying to him the entire tract now owned by appellants.

August 10, 1926, Mr. Schacht purchased from Theo A. Grahn, and others, two parcels of land, these tracts being a part of the easterly portion of the land now owned by appellants. The witness testified that there was no dispute as to the true location of the northwest corner of his property, which is the southwest corner of respondents' property.

Mr. H. M. Love, a surveyor of many years' experience, called as a witness by appellants, testified that, during the year 1921, at the request of Mr. Schacht and of one of the latter's grantors, he made a survey, including the property now owned by appellants and that owned by respondents. The witness testified that a plat, which was introduced in evidence, showed a complete subdivision of section 24, and, in larger scale, a plat of government lots Nos. 2 and 3, and the southwest quarter of the northeast quarter of the same

section. The witness testified that he found the corners of the section, which checked with the government field notes, and that he determined the size of the section, finding that the east half was "a little short. . . . the south line—the line from the southeast corner of the section—the quarter corner—is 2606 feet instead of 2640," and that, according to his survey, the north line of the southwest quarter of the northeast quarter, instead of being 1320 feet long (the normal length), is no more than 1303.10 feet in length. The plat prepared by Mr. Love shows the lands owned by both parties to this action.

Mr. Earl Grahn, called as a witness by respondents, testified that he had lived near the properties in question since 1898, and that at least a portion of the lands owned by appellants was purchased by them from a relative of the witness. The witness testified concerning a fence, which he stated had existed for many years along the boundary line here in dispute between the parties, and, in the course of his testimony, referred to a bridge across a small creek which exists somewhere in the easterly portion of the tracts, its location not being indicated on any exhibit. We quote from the testimony of this witness the following:

"A. The original property Schachts owned was owned by a jeweler—Anderson. I had an uncle behind Schachts, who owned the property in the rear and I remember the fence coming down not very far from Schacht's house. Q. And how far down towards the beach or waterfront was that? A. There used to be an old bridge and the fence followed the bridge—just across the creek—and then it headed for the bay. Q. In other words, the original fence came across the creek? A. The bridge was going across the creek and the fence followed the bridge. Q. Then on the other side of the bridge, the fence went on toward the beach? A. Yes. Q. And there was a trestle there? A. Yes. Q. And did the fence go to the trestle? A. Not quite because Mr. Wagner hooked up a bulkhead. Q. Mr. Wagner had a bulkhead up near the trestle? A. In from the trestle, I'd say, twenty or thirty feet. Q. Mr. Grahn, referring you to this map, which is Plaintiff's Exhibit 'C', it shows this piece of property, and outlining here, is the Schacht property (indicating) and this piece here is the Cross property (pointing to map) and this is the fence — the fence

along the boundary line between the two pieces of property. It runs toward the west here and down towards the waterfront, this way. Now, that fence has been there a long time, has it? A. Yes. Q. How long? A. Thirty-five years, anyway, since I visited up in there. I had an uncle up there, you see. Q. And was that fence there thirty-five years ago? A. Yes. Q. Been there ever since? A. As far as I know. Q. Now, then, you state that that fence went all the way down close to the creek? A. Right up that road. Q. It didn't go on after it crossed the creek—then it ran northerly toward a bulkhead near a trestle? A. Yes. Q. Was there a bulkhead there— A. Mr. Wagner built one quite a few years ago. Of course, there is not much left of it."

This testimony is not easily understood, as the points referred to by the witness are not indicated on the map. This difficulty is found in connection with much of the evidence, as, frequently, the nonprofessional witnesses (and, occasionally, the surveyors) did not identify, on the exhibits, the location of the places to which they referred in their testimony. Answering questions by counsel for the respective parties, a witness would make a statement concerning "this point" or "here" or "there." While the evidence would be easily understood by the trial court and counsel, in whose presence the witnesses probably illustrated their testimony by pointing to exhibits, examination of the record before us does not disclose what the witnesses were talking about.

Olin Sprague, a qualified civil engineer and surveyor, called as a witness on behalf of respondents, testified that, during the month of June, 1946, he was retained by Mr. Cross to run the southerly and southeasterly boundary line of his property. The witness testified that Mr. Cross furnished him with a description of the property, contained in the deed which was admitted in evidence, and that, after running the lines, he prepared a map which was admitted in evidence as defendants' exhibit No. 1. The witness testified that, expressing chains and links in feet, the entire southerly boundary line of respondents' property is 1,551 feet in length, extending practically due east from the point of beginning, and that this checked with the length of appel-

lants' northern boundary line as shown in the deeds to appellants, the deeds all describing a common line.

The testimony of the witness Love having been called to Mr. Sprague's attention, he testified that many government sections were either "short" or "over," but that the descriptions here in question made no reference to government subdivisions, save in regard to the starting points of the metes and bounds descriptions contained in the deeds. The witness also testified that there was no dispute between the parties concerning the common westerly starting point of the boundary line here in question. Mr. Sprague fixed the easterly terminus of the boundary line between the lands owned by respondents and appellants at a point indicated upon the plat which he had prepared and which is in evidence.

The witness further testified that, in conveyances by government subdivisions, if the section is short, a certain method is followed in prorating the shortage, and a comparable method is employed in prorating any excess land within the boundaries established by the government survey.

The witness did not subdivide the section, nor did he concern himself with any possible shortage thereof. He followed the descriptions contained in the deeds and ran his survey eastward from the described starting point of the southerly boundary of respondents' property.

It should be noted that the description, contained in their deed, of the larger tract owned by respondents commences at the southwest corner of lot 2, section 24, township 25 north, range 1 east W. M., thence east 20 chains, thence north 4 chains 22 links, thence west 20 chains, and thence south to the point of beginning.

The tract to the south, owned by appellants, is described in their deed as follows:

"Beginning at the Northeast corner of the Southwest Quarter of the Northeast Quarter of Section 24, Township 25 North, Range 1 East, W. M., thence South 24 rods; thence West 80 rods; thence North 24 rods; thence East 80 rods to place of beginning, containing 13 acres more or less."

The description of respondents' land stems from the west, while that of appellants' land stems from the east.

Assuming that the witness Love is correct in stating that the east and west dimension of the section is short, the land conveyed to appellants by the above-quoted description would run west over the center line of the section; but, if appellants' grantors owned sufficient land to cover the description of the tract which they conveyed to appellants, the latter would, of course, own the tract of land, as described, 80 rods in length.

The evidence does not show by what conveyances Mr. and Mrs. Wagner acquired the lands that they transferred to respondents. The deed to respondents conveys four different descriptions. The first two of these descriptions read as follows:

"Commencing at the southwest corner of Lot 2, Section 24, Township 25 North, Range 1 East, W. M., thence east 20 chains thence north 4 chains 22 links, thence west 20 chains, thence south to point of beginning.

"Also commencing at the southeast corner of said Lot 2, Section 24 Township 25 North, Range 1 East, W. M., thence north 4 chains 22 links, thence east 1 chain 25 links, thence south 43° 30′ east 4 chains 10 links, thence south 25° west 1 chain 40 links, thence west 3 chains 50 links to point of beginning."

We shall refer to the first description as tract A, and to the second description as tract B. The initial point of the description of tract A is the southwest corner of government lot 2, which is located on the north and south center line of section 24. The land conveyed is a rectangle containing 20 chains (1320 feet) of land on its east and west dimension. If section 24 is short, as testified by the witness Love, and which the witness Sprague did not deny, as he did not survey the section, tract A, as conveyed to respondents, included a strip of land, approximately seventeen feet wide, running north and south along the west margin of lot 3, section 24, which land was also owned by the grantors John and Mary Wagner, and was conveyed to respondents by description B.

The description of tract B commences at the southeast corner of lot 2, section 24, and.runs east from that point 3 chains 50 links (or 231 feet) to the southeasterly corner of respondents' land, this corner being the pivotal point in this litigation. The lines above referred to are, respectively, the north and south boundary line between the land owned by appellants and that owned by respondents.

The witness Sprague added the two dimensions of this south line (considering section 24 as a mile square), namely, 1320 feet and 231 feet, making the south boundary of respondents' property a line 1,551 feet in length, easterly from the southwest corner of government lot 2. The trial court, by the judgment rendered, fixed the east end of this line at a point north 89° 55′ 22″ east 1,551 feet from the starting point on the north and south line of section 24, 1,332.05 feet north of the center of section 24. The beginning point on the center line of the section, as described in the judgment, corresponds (whether exactly or not is unimportant) with the southwest corner of government lot 2.

Manifestly, if section 24 is a normal section a mile square, respondents own a tract of land 1,320 feet in length along its south boundary in lot 2, and a tract 231 feet in length along its south boundary in lot 3. If, on the other hand, the section is short, as indicated by the testimony of the witness Love, respondents received two deeds to the westerly seventeen feet (more or less) of the tract conveyed by description B, and the trial court erred in fixing the length of the south boundary of respondents' property at 1,551 feet easterly from the southwest corner of lot 2.

The witness Sprague testified that, in surveying lands conveyed by metes and bounds descriptions, he paid no attention to government section lines, save in so far as starting points based upon government subdivisions were concerned. Generally speaking, this would be correct, but, under the conditions above stated, if the two descriptions, in fact, overlap, the two metes, which, to some extent, coincide, should not be added together, and the description of tract B extended beyond the bounds fixed by the deed.

In its judgment, the trial court expressly referred to the testimony of the witness Sprague, and declared that survey to be true and correct; this without regard to the testimony of the witness Love to the effect that the section, in so far as its east and west dimensions are concerned, is short.

While the case at bar is equitable in its nature, the court made findings of fact and conclusions of law. Finding No. 5 reads as follows:

"That for more than thirty-five (35) years last past, said division line between the property described in Exhibit 'A', of the answer and affirmative defense and cross complaint of the defendants, MARION WILLIAM CROSS and ROSALIE CROSS, his wife, and the property of the plaintiffs, has been marked by a fence, which said fence was located upon said above described division line, and at all times said fence was recognized by all of the previous owners and present owners of said properties as the dividing and boundary line between said properties, and these defendants and their predecessors in title have at all times for more than seven (7) years last past, openly and hostilely claimed ownership of all the property up to said fence.

"That within two years last past the said plaintiffs did remove the easterly 17 feet of said boundary line fence and did also remove said fence from said easterly corner in a northerly direction for a distance of approximately 90 feet, and the said plaintiffs have threatened to again remove said fence in the event the same should be rebuilt on its former location by the said defendants herein.

"That the line of the fence which has been removed by the plaintiffs was identical with the survey line of the property of the defendants, CROSS, as surveyed and established on the ground by OLIN SPRAGUE, surveyor, and that said line as established by the said OLIN SPRAGUE, is the true boundary between the properties of the parties hereto."

While this finding is rather indefinite, it is unnecessary to consider it, as the case must be retried.

Appellants assign error upon the court's finding that the survey made by Olin Sprague was correct; upon the entry of judgment in favor of respondents, and upon the denial of appellants' motion for a new trial.

While the actual survey made by Mr. Sprague may be

accurate, if the theory advanced by Mr. Love be correct, a different situation would be presented.

In view of the evidence, in order to determine the question at issue between the parties as to the length of the boundary line in question, the court should have determined whether or not the section is one mile square, or more, or less.

We are of the opinion that the case should be retried. For this reason, we do not consider the matter of respondents' rights by possession or adverse possession of the tract of land, the ownership of which is the matter of dispute between the parties. The evidence, as disclosed by the record, upon this phase of the case is, in some instances, difficult to understand, as above stated. Considering the findings as a whole, they do not support the decree rendered, nor should it be held that the decree should be affirmed upon the record.

For the reasons assigned, the trial court erred in denying appellants' motion for a new trial.

The judgment appealed from is reversed, and the cause remanded to the superior court, with instructions to grant appellants' motion for a new trial of the action as to all issues presented by the pleadings.

MALLERY, C. J., STEINERT, JEFFERS, and SCHWELLENBACH, JJ., concur.